UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>WICAHPE MILK,<br><br>　　　　　　　Defendant. | 5:16-CR-50118-JLV<br><br>REPORT AND RECOMMENDATION |
|---|---|

Pending is Defendant's Motion to Suppress Evidence (Doc. 45). An evidentiary hearing was held on August 8, 2017. Defendant was personally present and represented by his attorney of record, Terry Pechota. The Government was represented by the Assistant United States Attorney Kathryn Rich. Six witnesses testified at the hearing. Seventeen exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Suppress Evidence be denied.

## **JURISDICTION**

Defendant is charged in a Superseding Indictment with Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and Prohibited Person in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated March 9, 2015.

## **FACTUAL BACKGROUND**

On August 17, 2016, at about 1:49 a.m., Pennington County Sheriff's Deputy Keith Carlson observed a red 1993 Pontiac Grand Prix driving erratically in Box Elder, South Dakota. (Ex. 1). Deputy Carlson was engaged in a saturation patrol focusing on alcohol or drug-impaired drivers. Deputy Carlson observed the red Grand Prix stop at a stop sign for approximately thirty seconds. No other vehicles were present, nor was there any apparent reason for such a lengthy stop. Deputy Carlson followed the red vehicle, and observed the vehicle's two right-side tires drift onto the shoulder of the road. The court finds Deputy Carlson to be a credible witness.

Deputy Carlson initiated a traffic stop based on the erratic driving. When he approached the Grand Prix, he could smell the odor of marijuana. The driver identified himself as Michael Croyle. The defendant, Wicahpe Milk, sat in the back passenger seat. Mr. Milk identified himself as "Wiconi" Milk, stated he did not have an identification card, and provided a birthdate and

social security number. (Ex. 1). Two female passengers were also in the car, and identified themselves.

Mr. Croyle then accompanied Deputy Carlson to the patrol car. Mr. Croyle's pupils were dilated, he could not sit still, and he repeatedly scratched his arms, head, and face. Mr. Croyle told Deputy Carlson that he was on probation. (Ex. 1). Dispatch notified Deputy Carlson that Mr. Croyle did not have a valid driver's license, and that no results came back for the information Mr. Milk provided. Mr. Croyle then consented to perform standardized field sobriety tests.

Additional deputies then arrived on the scene. Deputy Joshua Kunde asked Mr. Milk to step out of the vehicle. Mr. Milk then provided his correct name, birthdate, and social security number. Dispatch found that Mr. Milk had an outstanding federal arrest warrant. When Deputy Kunde advised Mr. Milk he would be taken into custody based on the warrant, Mr. Milk ran away. Deputies pursued Mr. Milk, apprehended him, and placed him in handcuffs. Based on Mr. Croyle's sobriety tests, Deputy Carlson determined Mr. Croyle was under the influence of drugs and arrested him as well.

Deputies Carlson and Jonathan Edwards then searched the Grand Prix. They located methamphetamine, drug paraphernalia, scales, a handgun, cash, bags, and cell phones in the car. They also found drug paraphernalia on one of the female passengers. Law enforcement towed the Grand Prix and determined it was not registered to any of the occupants. On August 18, 2016, South Dakota Circuit Court Judge Heidi Linngren issued a search warrant

authorizing a further search of the car. (Ex. 2). On September 19, 2016, Judge Linngren issued a search warrant authorizing a search of the cell phones found in the car. (Ex. 15).

On August 1, 2016, Oglala Sioux Police obtained a phone belonging to Mr. Milk's spouse, Julissa Poor Bear. Ms. Poor Bear's neighbor turned the phone over to the tribal police and stated she believed Ms. Poor Bear, Mr. Milk, and others were selling methamphetamine. On August 18, 2016, Officer Leonard Her Many Horses applied for a search warrant to search Ms. Poor Bear's phone for information related to drug trafficking, and provided an affidavit stating probable cause. A tribal judge issued the search warrant. (Ex. 13).

## **DISCUSSION**

Mr. Milk seeks to suppress all evidence resulting from the searches of the Grand Prix and of Ms. Poor Bear's cell phone. Mr. Milk first argues that law enforcement did not have probable cause to stop the car. Next, Mr. Milk argues no probable cause supported a warrantless search of the car. In support of his argument, he states that the reason for the traffic stop—a traffic violation—did not provide probable cause indicating the car contained contraband. Mr. Milk next argues no probable cause supported his arrest. Based on these arguments, Mr. Milk claims that the warrants to search the cell phones found in the car were invalid, and all statements and resulting evidence

must be suppressed.[1] Mr. Milk finally argues that the Oglala Sioux Tribal Court warrant to search Julissa Poor Bear's cell phone was unsupported by probable cause. (Doc. 45).

In response, the government argues that Mr. Milk does not have standing to contest either the search of the car or of Julissa Poor Bear's cell phone. (Doc. 52). Even if Mr. Milk does have standing, the government argues all searches and warrants were supported by probable cause.

I.  **Whether Mr. Milk has Standing to Challenge the Searches of the Vehicle and of Julissa Poor Bear's Cell Phone**

The Fourth Amendment guarantees the right to be secure in one's person and effects, and protects against unreasonable searches and seizures. However, "Fourth Amendment rights are personal . . . [and] may not be vicariously asserted." United States v. Douglas, 744 F.3d 1065, 1071 (8th Cir. 2014) (internal quotations omitted). A defendant's "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143, 148–49 (1978) (holding that defendants had no standing to challenge search of vehicle glove compartment or area under seat in a car in which they were "merely passengers"); see United States v. Stringer, 739 F.3d 391, 396 (8th Cir. 2014) (holding that defendant had no standing to challenge search of third party's cell phone); United States v. Barragan, 379 F.3d 524, 530 (8th Cir. 2004) (holding

---

[1] Mr. Milk does not identify which, if any, statements the court should suppress. The government states that Mr. Milk made no incriminating statements.

5

that defendant had no standing to challenge search of vehicle where his name did not appear on any ownership documents and he had no ownership interest in vehicle). Factors relevant to standing include:

> ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994).

"The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched." United States v. Maxwell, 778 F.3d 719, 732 (8th Cir. 2015) (quoting Gomez, 16 F.3d at 256)). The defendant must "present evidence of his standing, or at least point to specific evidence in the record which the government presented that established his standing." Maxwell, 778 F.3d at 732 (internal quotations and alterations omitted). If a defendant "fails to prove a sufficiently close connection to the relevant places . . . searched he has no standing to claim that they were searched or seized illegally." Gomez, 16 F.3d at 256.

### A. Mr. Milk has no standing to challenge the vehicle search

"Generally, a mere passenger does not have standing to challenge a vehicle search where he has 'neither a property nor a possessory interest in the automobile.'" United States v. Anguiano, 795 F.3d 873, 876 (8th Cir. 2015) (quoting Rakas, 439 U.S. at 148). Here, Mr. Milk had no ownership interest in the Grand Prix, and his name did not appear on any ownership documents. See Barragan, 379 F.3d at 530. Furthermore, Mr. Milk fails to prove any facts

showing he had a reasonable expectation of privacy in the Grand Prix and was anything more than a mere passenger.  See Anguiano, 795 F.3d at 876.  Because Mr. Milk was a mere passenger, he had no legitimate expectation of privacy in the vehicle, and accordingly has no standing to challenge the search.  See Rakas, 439 U.S. at 143.

### B. Mr. Milk has no standing to challenge the search of Julissa Poor Bear's cell phone

Law enforcement found incriminating communications between Mr. Milk and Ms. Poor Bear on Ms. Poor Bear's cell phone.  In United States v. Stringer, law enforcement found incriminating evidence on a third party's cell phone; the Eighth Circuit found that the defendant had no expectation of privacy in the phone, and therefore no standing to challenge the search.  739 F.3d at 396.  Here, Mr. Milk makes no argument that he had a legitimate expectation of privacy in the contents of the cell phone; he merely states that the phone contained incriminating evidence.  He asserts no ownership, possession, control, or any subjective or objective expectation of privacy in the phone.  See Gomez, 16 F.3d at 256.  Accordingly, Mr. Milk has no standing to challenge the search of Ms. Poor Bear's cell phone.

### II. Whether Law Enforcement had Probable Cause to Stop and Search the Vehicle

Even if Mr. Milk has standing to challenge the vehicle search, probable cause nevertheless supported both the traffic stop and the warrantless search.  The Fourth Amendment right against unreasonable searches and seizures is "preserved by a requirement that searches be conducted pursuant to a warrant

7

issued by an independent judicial officer." California v. Carney, 471 U.S. 386, 390 (1985).  Certain searches nonetheless conform to the Fourth Amendment reasonableness standard even when not conducted pursuant to a warrant. United States v. Caves, 890 F.2d 87, 89 (8th Cir. 1989) (citing Carney, 471 U.S. at 390).

One such exception to the Fourth Amendment warrant requirement is the "automobile exception," which permits a police officer who has lawfully made a traffic stop to search the vehicle without a warrant if probable cause exists to believe that contraband or evidence of criminal activity is located inside.  United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997).  Probable cause requires "'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"  Id. (quoting Illinois v. Gates, 462 U.S. 213, 243–44 n.13 (1983)).

"[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator."  United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996).  However, "[a] traffic violation alone will not justify an automobile search; there must be probable cause or consent."  United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999).  Probable cause to conduct a search of the entire vehicle may stem from a lawful traffic stop if police reasonably believe, at the time they begin the search, that contraband or evidence of criminal activity is in the vehicle.  Caves, 890 F.2d at 90 (quoting Brinegar v. United States, 338 U.S. 160, 175–76 (1949)).  The odor of an illegal drug, such as marijuana, provides probable cause to search an entire vehicle for drugs.  United States v.

Mayfield, 678 Fed. Appx. 437, 439 (8th Cir. 2017) ("The parties agree that the odor of marijuana emanating from a vehicle provides probable cause to search the vehicle[.]"); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) (finding warrantless search of vehicle lawful where deputy smelled odor of burnt marijuana coming from vehicle while ticketing defendant for seatbelt violation); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (finding warrantless search of entire vehicle supported by probable cause where officer smelled burnt marijuana).

Here, police conducted a lawful traffic stop.  Deputy Carlson's dash camera footage shows the Grand Prix weaving and braking randomly.  (Ex. 1). Deputy Carlson also testified that he observed the Grand Prix cross the centerline on one occasion, and drive off the roadway when attempting to make a turn.  These facts establish probable cause to conduct a traffic stop.  Deputy Carlson further testified that he smelled the odor of marijuana emanating from the Grand Prix after he pulled the car over.  Additionally, Deputy Carlson observed that Mr. Croyle's pupils were dilated, he exhibited erratic behavior, and he failed the field sobriety test.  These factors, observed during a lawful traffic stop, provided probable cause to conduct a warrantless search of the vehicle.  See, e.g., Peltier, 217 F.3d at 610.

### III. Whether Law Enforcement had Probable Cause to Arrest Mr. Milk and Obtain Search Warrants

Mr. Milk argues that no probable cause existed to support his arrest and the searches of Ms. Poor Bear's cell phone, the Grand Prix, and the cell phones discovered in the vehicle.  Law enforcement arrested Mr. Milk, conducted a

9

second search of the Grand Prix, and searched all cell phones pursuant to warrants. "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Therefore, "[w]hen the issuing judge relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (internal quotations and alteration omitted). In addition, the issuing court's "determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983). "[T]he duty of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

Mr. Milk was arrested pursuant to an outstanding federal warrant. (5:04-cr-50125-KES-1, Doc. 97). United States Magistrate Judge Veronica Duffy issued the arrest warrant on April 15, 2016 based on Mr. Milk's supervised release violations. The Petition to Revoke Supervised Release provided probable cause for the warrant; this court gives deference to the magistrate's probable cause determination. See Gates, 462 U.S. at 236. Accordingly, this court finds that law enforcement had probable cause to arrest Mr. Milk.

Mr. Milk next argues that the search of Ms. Poor Bear's cell phone was unsupported by probable cause. Officer Her Many Horses obtained a search warrant from an Oglala Sioux tribal judge to search the phone. (Ex. 14). Mr. Milk argues that there was no probable cause to search the cell phone "other than the unsubstantiated accusation of a person who was at odds with the person who lost the phone." (Doc. 45 at p. 3). Mr. Milk provides no additional evidence to support his argument. Officer Her Many Horses provided an affidavit in support of the search warrant, and this court defers to the issuing judge's determination of probable cause. See Gates, 462 U.S. at 236. Accordingly, even if Mr. Milk has standing to challenge the search of Ms. Poor Bear's cell phone, this court finds the search was supported by probable cause.

For the same reasons, the searches of the vehicle and the cell phones discovered in the vehicle were valid. Both searches were undertaken pursuant to warrants issued by a South Dakota circuit court judge. (Ex. 2, 15). The evidence supporting the warrants was discovered lawfully as stated above, and law enforcement submitted affidavits in support of both search warrants. This court defers to the circuit court judge's finding of probable cause. Therefore, the court finds that the search warrants provided probable cause for the searches of the Grand Prix and the cell phones discovered therein.

## **CONCLUSION**

It is respectfully recommended that Defendant's Motion to Suppress Evidence (Doc. 45) be denied in its entirety. Defendant does not have standing to challenge the searches of the vehicle and of Julissa Poor Bear's cell phone.

Even if Defendant has standing, no constitutional violation occurred. Furthermore, Defendant was arrested based on a valid arrest warrant, and the cell phones discovered in the vehicle were searched based on a valid search warrant.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 2nd day of November, 2017.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge